## Rochester, et al. v. Owen.

(Decided November 28, 1922.)

## Appeal from Crittenden Circuit Court.

Judicial Sales—Sale in Excess of Amount Necessary—Caveat Emptor.—Although the judgment under which the master commissioner makes a sale of land contains blanks with reference to certain sums of money and states other sums, and the master commissioner who has handled the claims against the estate knows the amount of the indebtedness of the said estate, sells more property than is necessary to pay the amount set out in the judgment but not more than enough to pay the actual debts of the estate, if the blanks in the judgment had been filled in, and after making the sale reports the same to the court and the said report is duly confirmed, and all other steps thereafter, including the distribution of the money, are properly taken under the orders and directions of the court, the purchaser at the sale to whom the rule of caveat emptor applies has no cause of action against the master commissioner for the recovery of the money paid the master commissioner in pursuance to said sale, he being justified in paying out the money as directed by the orders and judgments of the court.

C. S. NUNN for appellants.

MILLER & MORSE for appellee.

Opinion of the Court by Judge Sampson—Reversing.

While J. G. Rochester was master commissioner of the Crittenden circuit court a judgment was entered in the case of H. A. Haynes, Administrator of W. L. Bennett, v. Julia A. Bennett and others, praying a settlement of the estate of W. L. Bennett and a sale of lands belonging to his estate for the payment of indebtedness against the estate. In accordance with the prayer of the petition, the judgment was entered directing a settlement of the estate of W. L. Bennett and referring the matter to the master commissioner for the purpose of ascertaining the indebtedness as well as assets of the estate. All the heirs of Bennett were infants at the time. The judgment entered in that action in part reads: "It is now ordered and adjudged by the court that the decedent, W. L. Bennett, owed at the time of his death debts to the amount of $—— more than could be paid from the personal estate of the decedent, W. L. Bennett, and after exhausting the personal estate of decedent, W.

L. Bennett, there still remains unpaid debts amounting to $———, including all costs of this action as well as attorney's fees due plaintiff's attorney of $100.00, which is allowed by the court to plaintiff's attorneys, John A. Moore and T. C. Bennett, and it is adjudged by the court that to settle said debts and cost it is necessary to sell a sufficient amount of real estate described in the petition owned by decedent at the time of his death for that purpose, and for that purpose the court orders and adjudges that so much of the following described real property as may be necessary be sold to pay said debts, to-wit.'' (Then follows a description of town lots and farming lands owned by decedent.)

The orders and reports of the master commissioner show that the estate then owed something like $1,500.00, a part of which claim had been reported by the master commissioner as allowed. Under that judgment the master commissioner has sold the three town lots in Dycusberg, but the prices bid were altogether insufficient to pay the debts of the decedent. After calculating the amount yet to be realized from the sale and necessary to pay the outstanding obligations of decedent, the commissioner offered to sell so much of the farming lands as would pay the balance of the debt, and asked if there were any person present who was willing to pay the necessary sum which he named and take less than the whole of the lands, but he received no bids of this kind. After waiting a reasonable time he offered the whole tract of land for sale and Owen being the highest and best bidder at $1,035.00 was declared the purchaser. He executed the necessary purchase money bonds to the master commissioner having the force and effect of judgments. Soon thereafter the master commissioner was directed to collect said sale bonds when they became due, and he did so, at the same time giving possession of the property to Owen, and Owen moved upon and took actual possession of the premises and was living there when the second suit (one in ejectment) was brought by the heirs of Bennett to oust Owen from possession of the premises, alleging that the whole proceeding under which Owen purchased was void as to them for the reason that the judgment did not recite the amount for which the lands were to be sold but instead thereof left a blank in which to fill in the amount, the only amount actually stated being the $100.00 attorney fee to plaintiff's counsel.

This action was dismissed by the trial court upon hearing and was appealed to this court, where the judgment was reversed, being held void as to the infants. In the meantime the trial court had directed the then master commissioner, on motion of Owen, to return to Owen the $263.00 left in his hands as a part of the proceeds of the sale of the Bennett lands. Immediately upon the return of the case to the Crittenden circuit court Owen commenced this action against appellant Rochester and the United States Fidelity and Guaranty Company of Baltimore, Maryland, as surety, to recover the full amount which Owen had paid for the land and which had not theretofore been returned to him by the master commissioner. The case having been prepared and submitted the trial judge held appellee Owen entitled to the relief prayed and entitled to recover $717.69, with six per cent interest from October 19, 1920, and the cost incurred in the action. From this judgment Rochester and the United States Fidelity Company appeal.

Many questions are made on both sides, some of which it will be entirely unnecessary for us to consider because we find it necessary to reverse the judgment upon one or two grounds made by counsel for appellants. As the judgment directed the sale of the lots and of the farming lands and the sum of the indebtedness was actually known to the master commissioner and further the sale was made by him in good faith and his report of claims was duly received and filed by the court, and the report of sale filed and actually confirmed by the court in the usual course, and the order made by the court directing the master commissioner to collect the sale bond and to pay out the money to certain creditors of the estate of Bennett, and this order was faithfully and entirely carried out and the money collected was all distributed in the payment of these claims, except the sum of $363.00, and there was no objection or exception filed to any of these orders or claims or reports of the master commissioner, the said commissioner is fully protected by said orders and was not and is not liable to Owen for any part of the money paid in by him on the purchase of the lands except that which was left in the hands of the master commissioner, because it is a rule of long standing in this Commonwealth that in all judicial sales where there is no fraud the maxim *caveat emptor* applies in full force. The buyer at such a sale must beware. There is no warranty of title or quality. Such sales are by the

court through its arm, the master commissioner, and there is no one to go back on if the buyer takes nothing. We so held in the case of Williams v. Glenn's Admr., 87 Ky. 87, which was delivered in January, 1888, and there are many cases since that time to the same effect. 16 R. C. L., p. 119; 11 C. J. 44; Beavers v. Nelson, 152 Ky. 319; Edelen's Pleading and Practice (Ky.) 1252; Bullock, &c. v. Gudgell, 117 Ky. 288. It is admitted that the purchaser, Owen, made no effort whatever between the time of his purchase and the confirmation of the sale to find out whether the title which he was buying was good or bad. It was his duty to have examined the title and satisfied himself concerning its marketability, for he was then a party to the action under the rule that an accepted bidder at a judicial sale is thereafter a party to the proceeding and bound by all steps taken by the court affecting his title. He has no right to lay down and allow the court through a clerical misprision or other error to carry out the sale when he had it in his power to file exceptions to the report of sale and raise the question as to the validity of the proceedings which led up to the sale. Had he done this he would not have been required to pay into court the amount of his bid. After confirmation of the sale and the payment of the money the purchaser, Owen, could have no relief save and except from such creditors as his money was paid to.

It is argued that the master commissioner brought about all the trouble by failing to perform his duties; that is, failing to carry out the judgment and sale for no more than $100.00 worth of land. But being in possession of knowledge of claims filed and approved by the court that the indebtedness of the estate was more than $700.00 with other claims yet to be approved, it was not strange that he made the sales not only of the lots but of the farming lands. His report of sale was then confirmed by the trial court and he directed to collect the purchase money from Owen. All his subsequent acts were duly approved. He acted under the direction of the court and was not so much to blame as that honorable court in entering the judgment and leaving a blank therein, and yet no one would contend that the judge of that court is in any way responsible for the money paid by Owen, for he was acting in good faith. As one of the parties Rochester, the master commissioner, or Owen, the purchaser, is bound to suffer, that one, Owen, who was most to blame and but for whose negligence in fail-

ing to examine his title no wrong would have occurred. must suffer the loss, if loss there be.

Judgment reversed for proceedings consistent with this opinion.